# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| INTEGRAL WIRELESS TECHNOLOGIES LLC, | |
| *Plaintiff,* | Civil Action No. 2:26-cv-00198 |
| v. | **JURY TRIAL DEMANDED** |
| LUCID GROUP, INC., | |
| *Defendant.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Lucid Group, Inc. ("Lucid" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|  | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,292,283 | Apparatus And Method For Performing Sub-Pixel Vector Estimations Using Quadratic Approximations | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7292283 |
| 2. | 7,586,424 | Data Coding Using An Exponent And A Residual | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7586424 |

|  | Patent No. | Title | Available At |
|---|---|---|---|
| 3. | 7,668,258 | Systems And Methods For Transmitter Diversity Expansion | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7668258 |
| 4. | 7,822,141 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7822141 |
| 5. | 8,031,654 | Wireless Communication System, Apparatus For Supporting Data Flow And Methods Therefor | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8031654 |
| 6. | 8,976,714 | Providing And Acquiring A System Information Message In A Wireless Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8976714 |
| 7. | 9,207,748 | Systems And Methods For A Wireless Device Wake-Up Process Including Power-Save And Non-Power-Save Modes | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9207748 |

2.      Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.      Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W Martin Luther King Jr. Blvd., Unit 281, Austin, TX 78701.

4.      Upon information and belief based on public information, Lucid is a corporation organized and existing under the laws of Delaware.

5.      Upon information and belief based on public information, Lucid maintains a regular and established place of business in this District located at 7700 Windrose Ave. Ste. G172, Plano, TX 75024.

6.    Lucid's registered agent is Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

7.    Integral Wireless repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

8.    This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because they have maintained established and regular places of business in this District and have committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

11.    On information and belief based on public information, Lucid maintains a regular and established place of business in this District located at 7700 Windrose Ave., Ste. G172, Plano, TX 75024.

12.    In addition, for example, on information and belief, Lucid does business in Texas through its subsidiaries, including through its subsidiary Lucid Group USA, Inc., which is registered to do business in Texas (Texas SOS File Number: 0803795303).

13.    On information and belief, Defendant Lucid is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein, including its registration to do business in Texas, which purposefully avail the Defendant of the privilege of conducting those activities in this state and

this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, affiliates, and/or consumers.

14.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offer its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

15.     Defendant is engaging in activities, including but not limited to transacting business in this District and purposefully directing its business activities, including the installation, maintenance, and use of infringing products and other related technologies in this District, and the sale or offer for sale of services and goods in this District to aid, abet, or contribute to the infringement of third parties in this District.

16.     Defendant commits acts of infringement in this District, including, but not limited to, selling, offering for sale, and using (including through testing) the Accused Products.

17.     Defendant commits acts of induced infringement in this District, including, but not limited to inducement of infringement by its parents, subsidiaries, partners, affiliates, and end-users to use the Accused Products.

18.     Defendant commits acts of contributory infringement in this District, including, but not limited to contributing to infringement by its parents, subsidiaries, partners, affiliates, and end-

users through its use of the Accused Products.

19.    Such a corporate and commercial presence by Defendant Lucid furthers the development, design, manufacture, importation, distribution, and sale of Defendant's infringing products in Texas, including in this District.  Through utilization of its business segments and the direction and control of its subsidiaries and affiliates, Lucid has committed acts of direct and/or indirect patent infringement within Texas, this District, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Lucid would not offend traditional notions of fair play and substantial justice.

20.    Based on Defendant Lucid's connections and relationship with its distributors, resellers, contractors, dealers, installers, local and U.S. based national retailers, and digital distribution platforms, Lucid knows that Texas is a termination point of the established distribution channel for the sale and use of Lucid products.  Lucid, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc*., 2009 WL 1025467, at (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As alleged herein, Defendant Lucid has committed acts of infringement in this District.  As further alleged herein, Defendant Lucid, via its own operations and employees located there, has a regular and established place of business, in this District.  Accordingly, Lucid may be sued in this district under 28 U.S.C. § 1400(b).

**THE ACCUSED PRODUCTS**

22.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

23.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes various H.265/HEVC compatible devices, 802.11n/ac/ax Wi-Fi compatible devices, 802.11 Wi-Fi and Bluetooth compatible devices, Bluetooth BLE 5.0 and higher version compatible devices, and Bluetooth 4.1 and higher compatible devices compatible devices. including, but not limited to, the "Accused Products" set forth below:

- **Lucid Air**, including but not limited to:

    o   Lucid Air (2023)

    o   Lucid Air (2024)

    o   Lucid Air (2025)

- **Lucid Air Pure**, including but not limited to:

    o   Lucid Air Pure (2026)

- **Lucid Air Touring**, including but not limited to:

    o   Lucid Air Touring (2023)

    o   Lucid Air Touring (2024)

    o   Lucid Air Touring (2025)

    o   Lucid Air Touring (2026)

- **Lucid Air Grand Touring**, including but not limited to:

    o   Lucid Air Grand Touring (2022)

    o   Lucid Air Grand Touring (2023)

    o   Lucid Air Grand Touring (2024)

    o   Lucid Air Grand Touring (2025)

- o  Lucid Air Grand Touring (2026)

- **Lucid Air Sapphire**, including but not limited to:

  - o  Lucid Air Sapphire (2026)

- **Lucid Air Dream**, including but not limited to:

  - o  Lucid Air Dream Edition (2022)

  - o  Lucid Air Dream Edition Performance (2022)

- **Lucid Gravity Touring**, including but not limited to:

  - o  Lucid Gravity Touring (2026)

- **Lucid Gravity Grand Touring**, including but not limited to:

  - o  Lucid Gravity Grand Touring (2026)

- **Other Lucid Devices/Technologies**, including but not limited to:

  - o  Lucid Connected Home Charging Station - NA (J1772/NACS)

  - o  Lucid Connected Home Charging Station, LTE - NA (J1772/NACS)

  - o  Lucid Telematics control unit P11-K290G0-01

*See, e.g.*, **Exhibits A–F**.

24.    Upon information and belief, Lucid has implemented 5G connectivity in its telematics units at least for testing purposes and to ensure backward compatibility with 4G LTE, and its new vehicles have or will imminently have 5G connectivity in their telematics units.  *See, e.g., Staff Architect, Connectivity*, Lucid Motors job posting (seeking a telematics and connectivity architect with "[s]trong expertise in 5G, LTE, Bluetooth, V2X, GNSS, and embedded communication gateways"), available at https://www.climatechangecareers.com/job/lucid-motors/phoenix-az-united-states/staff-architect-connectivity/ (last accessed March 5, 2026).

25.    Defendant also instruct their customers, agents, employees, and affiliates regarding

how to use the Accused Products for infringing purposes.  *See, e.g.*, *Lucid Gravity Owners Manual*, available at  https://lucidmotors.com/media/document/Lucid-Gravity-Owners-Manual_en-US.pdf (last visited March 5, 2026); *Lucid Air Owners Manual*, available at https://lucidmotors.com/media/document/OM_Air_enUS_v35_1.pdf (last visited March 5, 2026).

26.    Defendant also imports into the United States, distributes, and sells the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners.  *See, e.g.*, *Available Vehicles*, Lucid Motors, https://lucidmotors.com/available-vehicles (showing Lucid's products for sale) (last visited March 5, 2026).  Those sales occur in the United States, and throughout Texas, including in this District.

27.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,292,283

28.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

29.    For purposes of this Count, the term "Accused Products" shall mean the Lucid Motors **H.265 (HEVC) video encoding** compatible devices, including but not limited to  **Lucid Air Touring (2026); Lucid Air Pure (2026); Lucid Air Grand Touring (2026); Lucid Air 2025; Lucid Air 2024; Lucid Air 2023; Lucid Air Touring 2025; Lucid Air Touring 2024; Lucid Air Touring 2023; Lucid Air Grand Touring 2025; Lucid Air Grand Touring 2024; Lucid Air Grand Touring 2023; Lucid Air Grand Touring 2022; Lucid Air Sapphire (2026); Lucid Air Dream Edition (2022); Lucid Gravity Grand Touring (2026); and Lucid Gravity Touring (2026), etc.**, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the

foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

30.      The USPTO duly issued U.S. Patent No. 7,292,283 (hereinafter, the "'283 patent") on November 6, 2007, after full and fair examination of Application No. 10/990,451which was filed on November 16, 2004.  *See* '283 patent at p. 1.

31.      Integral Wireless owns all substantial rights, interest, and title in and to the '283 patent, including the sole and exclusive right to prosecute this action and enforce the '283 patent against infringers and to collect damages for all relevant times.

32.      The claims of the '283 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed invention includes inventive components that improve motion estimation, and generating refined sub-pixel vectors for motion estimation from vector correlation values and converged vector correlation values using quadratic approximations by using apparatuses and methods including defining a minimum vector position value of a converged vector and then determining a predetermined number of vector correlation samples around the minimum vector position value.

33.      The written description of the '283 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

34.      Defendant has directly infringed one or more claims of the '283 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

35.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '283 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,292,283).

36.    As just one example, as detailed in Exhibit A, Defendant, through the use and provision of the Accused Products, performs a method to estimate a refined sub-pixel minimum vector position during a frame conversion, the method comprising: defining a minimum vector position value of a converged vector; determining a predetermined number of vector correlation samples around the minimum vector position value, the predetermined number of vector correlation samples providing a coarse correlation surface estimation of the minimum vector position value; and performing a correlation surface fitting of the predetermined number of vector correlation samples using a quadratic approximation of the coarse correlation surface estimation of the minimum value, the correlation surface fitting resulting in a refined sub-pixel minimum vector position.

37.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

38.    Defendant willfully blinded itself to the existence of the '283 patent and Defendant's infringement, but Defendant had actual knowledge of the '283 patent since at least the time of receiving the original complaint in this action.

39.    Defendant has also indirectly infringed one or more claims of the '283 patent by inducing others to directly infringe said claims.

40.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the

doctrine of equivalents, one or more claims of the '283 patent by providing or requiring use of the Accused Products.

41.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '283 patent, including, for example, claim 1.

42.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

43.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '283 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '283 patent.

44.    Defendant's inducement is ongoing.

45.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '283 patent.

46.    Defendant has contributed to the direct infringement of one or more claims of the '283 patent by their personnel, contractors, and customers.

47.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '283 patent, including, for example, claim 1.

48.     The special features constitute a material part of the invention of one or more of the claims of the '283 patent and are not staple articles of commerce suitable for substantial non-infringing use.

49.     Defendant's contributory infringement is ongoing.

50.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

51.     Defendant's direct infringement of one or more claims of the '283 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

52.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '283 patent.

53.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '283 patent.  Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

54.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,586,424

55.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

56.    For purposes of this Count, the term "Accused Products" shall mean the Lucid Motors **H.265 (HEVC) video encoding** compatible devices, including but not limited to **Lucid Air Touring (2026); Lucid Air Pure (2026); Lucid Air Grand Touring (2026); Lucid Air 2025; Lucid Air 2024; Lucid Air 2023; Lucid Air Touring 2025; Lucid Air Touring 2024; Lucid Air Touring 2023; Lucid Air Grand Touring 2025; Lucid Air Grand Touring 2024; Lucid Air Grand Touring 2023; Lucid Air Grand Touring 2022; Lucid Air Sapphire (2026); Lucid Air Dream Edition (2022); Lucid Gravity Grand Touring (2026); and Lucid Gravity Touring (2026), etc.**, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

57.    The USPTO duly issued U.S. Patent No. 7,586,424 (hereinafter, the "'424 patent") on September 8, 2009, after full and fair examination of Application No. 11/422,316 which was filed on June 5, 2006.  *See* '424 patent at p. 1.

58.    Integral Wireless owns all substantial rights, interest, and title in and to the '424 patent, including the sole and exclusive right to prosecute this action and enforce the '424 patent against infringers and to collect damages for all relevant times.

59.    The claims of the '424 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve coding audio and/or video data by coding

data symbol using an exponent and a residual, in which the exponent is coded using a variable length code, such as but not limited to a Huffman code or a Golomb code. The variable length code may be adaptive and may code according to probabilities or frequencies of occurrence of the data symbol.

60.     The written description of the '424 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

61.     Defendant has directly infringed one or more claims of the '424 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

62.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '424 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,586,424).

63.     As just one example, as detailed in Exhibit B, Defendant, through the use and provision of the Accused Products, performs a method comprising: coding a data symbol using a code comprising an exponent value and a residual value; coding the residual value using a fixed-length binary code; and coding the exponent value using a variable length code that is based on a frequency of occurrence of the exponent value.

64.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

65.    Defendant willfully blinded itself to the existence of the '424 patent and Defendant's infringement, but Defendant had actual knowledge of the '424 patent since at least the time of receiving the original complaint in this action.

66.    Defendant has also indirectly infringed one or more claims of the '424 patent by inducing others to directly infringe said claims.

67.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '424 patent by providing or requiring use of the Accused Products.

68.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '424 patent, including, for example, claim 1.

69.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

70.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '424 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '424 patent.

71.    Defendant's inducement is ongoing.

72.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '424 patent.

73.     Defendant has contributed to the direct infringement of one or more claims of the '424 patent by their personnel, contractors, and customers.

74.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '424 patent, including, for example, claim 1.

75.     The special features constitute a material part of the invention of one or more of the claims of the '424 patent and are not staple articles of commerce suitable for substantial non-infringing use.

76.     Defendant's contributory infringement is ongoing.

77.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

78.     Defendant's direct infringement of one or more claims of the '424 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

79.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '424 patent.

80.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '424 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license

technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

81.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,668,258

82.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

83.    For purposes of this Count, the term "Accused Products" shall mean the Lucid Motors 802.11n Wi-Fi compatible devices, including, but not limited to, **Lucid Gravity Touring, Lucid Gravity Grand Touring**, **Lucid Air Pure, Lucid Air Touring, Lucid Air Grand Touring, Lucid Air Sapphire**, **Lucid Connected Home Charging Station - NA (J1772/NACS), Lucid Connected Home Charging Station, LTE - NA (J1772/NACS) and Lucid Telematics control unit P11-K290G0-01, etc.**, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

84.    The USPTO duly issued U.S. Patent No. 7,668,258 (hereinafter, the "'258 patent") on February 23, 2010, after full and fair examination of Application No. 11/411,619 which was filed on April 26, 2006.  *See* '258 patent at p. 1.

85.    Integral Wireless owns all substantial rights, interest, and title in and to the '258 patent,

including the sole and exclusive right to prosecute this action and enforce the '258 patent against infringers and to collect damages for all relevant times.

86.     The claims of the '258 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve the function and operation of systems and methods for data transmission by providing methods and systems for transmitter diversity expansion, including steps and modules for applying a number of data streams (K) to a larger number of antennas (N).  This is performed by applying each of the data streams to a single base antenna, such that K data streams are applied to K base antennas, and by shifting and combining the K data streams to produce N-K data streams to apply to N-K extension antennas.

87.     The written description of the '258 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

88.     Defendant has directly infringed one or more claims of the '258 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

89.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 7 of the '258 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,668,258).

90.     As just one example, as detailed in Exhibit C, Defendant, through the use and provision of the Accused Products, provides a system comprising: a signal processor configured

to receive a first set of data streams, and generate a second set of one or more data streams based on a combination of the first set of data streams, wherein the combination of the first set of data streams is the product of a matrix multiplication of the data in the first set of data streams with a unitary matrix; and a plurality of antennas, wherein each antenna is configured to transmit a corresponding one data stream of the first and second sets of data streams.

91.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

92.    Defendant willfully blinded itself to the existence of the '258 patent and Defendant's infringement, but Defendant had actual knowledge of the '258 patent since at least the time of receiving the original complaint in this action.

93.    Defendant has also indirectly infringed one or more claims of the '258 patent by inducing others to directly infringe said claims.

94.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '258 patent by providing or requiring use of the Accused Products.

95.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '258 patent, including, for example, claim 7.

96.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing

instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

97.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '258 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '258 patent.

98.     Defendant's inducement is ongoing.

99.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '258 patent.

100.     Defendant has contributed to the direct infringement of one or more claims of the '258 patent by their personnel, contractors, and customers.

101.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '258 patent, including, for example, claim 7.

102.     The special features constitute a material part of the invention of one or more of the claims of the '258 patent and are not staple articles of commerce suitable for substantial non-infringing use.

103.     Defendant's contributory infringement is ongoing.

104.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

105.     Defendant's direct infringement of one or more claims of the '258 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless'

rights under the patent.

106.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '258 patent.

107.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '258 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

108.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,822,141

109.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

110.    For purposes of this Count, the term "Accused Products" shall mean the Lucid Motors 802.11n Wi-Fi compatible devices, including, but not limited to, **Lucid Gravity Touring, Lucid Gravity Grand Touring**, **Lucid Air Pure, Lucid Air Touring, Lucid Air Grand Touring, Lucid Air Sapphire**, **Lucid Connected Home Charging Station - NA (J1772/NACS), Lucid Connected Home Charging Station, LTE - NA (J1772/NACS) and Lucid Telematics control**

**unit P11-K290G0-01, etc.**, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

111.    The USPTO duly issued U.S. Patent No. 7,822,141 (hereinafter, the "'141 patent") on October 26, 2010, after full and fair examination of Application No.: 11/469,075 which was filed on August 13, 2006.  *See* '141 patent at p. 1.

112.    Integral Wireless owns all substantial rights, interest, and title in and to the '141 patent, including the sole and exclusive right to prosecute this action and enforce the '141 patent against infringers and to collect damages for all relevant times.

113.    The claims of the '141 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve systems and methods for transmission and reception of multiple data streams in a multiple-input, multiple-output communications channel.

114.    The written description of the '141 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

115.    Defendant has directly infringed one or more claims of the '141 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

116.    Defendant has directly infringed, either literally or under the doctrine of equivalents,

at least claim 1 of the '141 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,822,141).

117. As just one example, as detailed in Exhibit D, Defendant, through the use and provision of the Accused Products, perform a method comprising: method, comprising: generating two or more forward weighted signals by weighting two or more input signals with initial transmitter weights Vi associated with two or more forward channels; transmitting the two or more forward weighted signals via two or more forward antennas; receiving, at the two or more forward antennas, two or more reverse weighted signals transmitted via two or more reverse antennas corresponding to two or more reverse channels, the two or more reverse weighted signals formed from two or more reverse signals with receiver weights Ui associated with the two or more reverse channels; determining the receiver weights Ui associated with each of the two or more reverse weighted signals; choosing updated transmitter weights Vi' for the two or more forward channels based at least in part on the determined receiver weights Ui to provide a target level of gain for the two or more forward channels; and iteratively repeating the transmitting, receiving, determining, or combinations thereof, for subsequent transmissions using the two or more forward channels until the updated transmitter weights Vi', the receiver weights Ui, or combinations thereof, are at target values.

118. Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '141 patent.

119. Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,031,654

120.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

121.    For purposes of this Count, the term "Accused Products" shall mean the 5G compatible Lucid Motor devices such as **Lucid Air**, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

122.    The USPTO duly issued U.S. Patent No. 88,031,654 (hereinafter, the "'654 patent") on October 4, 2011, after full and fair examination of Application No. 11/726,397 which was filed on March 20, 2007.  *See* '654 patent at p. 1.

123.    Integral Wireless owns all substantial rights, interest, and title in and to the '654 patent, including the sole and exclusive right to prosecute this action and enforce the '654 patent against infringers and to collect damages for all relevant times.

124.    The claims of the '654 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve the function and operation of wireless communication systems by enabling more efficient handling of acknowledgment signaling in TCP-based data transfers.

125.    The written description of the '654 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

126.    Defendant has directly infringed, and continues to directly infringe, one or more claims of the '654 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

127.    Defendant has directly infringed, and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 5 of the '654 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,031,654).

128.    As just one example, as detailed in Exhibit E, Defendant, through the use and provision of the Accused Products, provides a wireless subscriber communication unit for use in acknowledging an allocation of resource in a wireless communication system employing transfer communication protocol (TCP) based data transfer between a network and the wireless subscriber communication unit, the wireless subscriber communication unit comprising: a receiver arranged to receive an allocation message and a TCP data segment; processing logic, operably coupled to the receiver and arranged to process the allocation message to identify an allocation of DL resources to receive the TCP data segment plus sufficient uplink (UL) resources to transfer a stand-alone acknowledgement (ACK) data segment, where the allocation of UL resources to support transmission of the stand-alone ACK data segment is based on a count performed in the network of a predetermined number of data segments transmitted to the wireless subscriber communication unit; and a transmitter arranged to transmit the stand-alone ACK data segment in response to the message.

129.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

130.     Defendant willfully blinded itself to the existence of the '654 patent and Defendant's infringement, but Defendant had actual knowledge of the '654 patent since at least the time of receiving the original complaint in this action.

131.     Defendant has also indirectly infringed one or more claims of the '654 patent by inducing others to directly infringe said claims.

132.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '654 patent by providing or requiring use of the Accused Products.

133.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '654 patent, including, for example, claim 5.

134.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

135.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '654 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '654 patent.

136.     Defendant's inducement is ongoing.

137.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '654 patent.

138.    Defendant has contributed to the direct infringement of one or more claims of the '654 patent by their personnel, contractors, and customers.

139.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '654 patent, including, for example, claim 5.

140.    The special features constitute a material part of the invention of one or more of the claims of the '654 patent and are not staple articles of commerce suitable for substantial non-infringing use.

141.    Defendant's contributory infringement is ongoing.

142.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

143.    Defendant's direct infringement of one or more claims of the '654 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

144.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '654 patent.

145.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '654 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license

technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

146.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,976,714

147.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

148.    For purposes of this Count, the term "Accused Products" shall mean the 5G compatible Lucid Motors devices such as **Lucid Air**, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

149.    The USPTO duly issued U.S. Patent No. 8,976,714 (hereinafter, the "'714 patent") on March 10, 2015, after full and fair examination of Application No. 13/133,076 and PCT No. PCT/EP2009/008798 which has a § 371 (c)(1), (2), (4) date of November 15, 2011.  *See* '714 patent at p. 1.

150.    Integral Wireless owns all substantial rights, interest, and title in and to the '714 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

151.    The written description of the '714 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

152.    The claims of the '714 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve receiving system information messages by disclosing user equipment that is configured to receive si-Windowlength information in a SI type 1 message.

153.    Defendant has directly infringed one or more claims of the '714 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

154.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '714 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,976,714).

155.    As just one example, as detailed in Exhibit F, Defendant, through the use and provision of the Accused Products provides a user equipment (UE) comprising: a receiver configured to receive si-Windowlength information, wherein the si-Windowlength information is received in a system information (SI) type 1 message; a processor configured to calculate a downlink (DL) subframe wherein a SI message starts, wherein the calculated DL subframe is based on a total number of DL subframes contained in a radio frame; the processor further configured to calculate in the radio frame where the SI message starts, wherein the calculated radio frame is based on the total number of DL subframes contained in the radio frame; and the receiver further configured to

receive the SI message, in the calculated DL subframe of the calculated radio frame, during a period provided by the si-Windowlength information.

156.    Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

157.    Defendant had actual knowledge of the '714 patent since at least the time of receiving the original complaint in this action.

158.    Defendant has also indirectly infringed one or more claims of the '714 patent by inducing others to directly infringe said claims.

159.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '714 patent by providing or requiring use of the Accused Products.

160.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '714 patent, including, for example, claim 1.

161.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

162.    Defendant is performing these steps, which constitute induced infringement with the

knowledge of the '714 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '714 patent.

163.    Defendant's inducement is ongoing.

164.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '714 patent.

165.    Defendant has contributed to the direct infringement of one or more claims of the '714 patent by their personnel, contractors, and customers.

166.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '714 patent, including, for example, claim 1.

167.    The special features constitute a material part of the invention of one or more of the claims of the '714 patent and are not staple articles of commerce suitable for substantial non-infringing use.

168.    Defendant's contributory infringement is ongoing.

169.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

170.    Defendant's direct infringement of one or more claims of the '714 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

171.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '714 patent.

172.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '714 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

173.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII:   INFRINGEMENT OF U.S. PATENT NO. 9,207,748

174.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

175.    For purposes of this Count, the term "Accused Products" shall mean the Lucid Motors Bluetooth 4.1 and higher compatible devices, including but not limited to **Air Pure 2026, Air Touring 2026, Air Grand Touring 2026, Air 2025, Air 2024, Air 2023, Air Touring 2025, Air Touring 2024, Air Touring 2023, Air Grand Touring 2025, Air Grand Touring 2024, Air Grand Touring 2023, Air Grand Touring 2022, Air Sapphire 2026, Gravity Grand Touring 2026, Gravity Touring 2026, Air Dream Edition Performance 2022,** and Lucid Motors Bluetooth BLE 5.0 and higher version compatible devices, including but not limited to **Lucid Gravity Grand Touring, Lucid Gravity Touring**, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases,

versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

176.     The USPTO duly issued U.S. Patent No. 9,207,748 (hereinafter, the "'748 patent") on December 8, 2015, after full and fair examination of Application No. 14/446,481 which was filed on July 30, 2014.  *See* '748 patent at p. 1.

177.     Integral Wireless owns all substantial rights, interest, and title in and to the '748 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

178.     The written description of the '748 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

179.     The claims of the '748 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve systems and methods for accessing computing devices over wireless local area networks and more particularly to systems and methods for waking computing devices from a powered down or sleep state with signals sent over wireless local area networks.

180.     Defendant has directly infringed one or more claims of the '748 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

181.     Defendant has directly infringed, either literally or under the doctrine of equivalents,

at least claim 8 of the '748 patent, as detailed in **Exhibit G** and **Exhibit H** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,822,141 – Charts 1 and 2).

182.    As just one example, as detailed in <u>Exhibit G</u> and <u>Exhibit H</u>, Defendant, through the use and provision of the Accused Products provides a computer comprising: a controller configured to trigger a wake-up detection mode at a wireless device for a pre-determined time period; and a communication interface coupled to the controller and configured to receive a wake-up packet addressed to the wireless device, wherein the wake-up packet is configured to cause the wireless device to initiate a switch from operating in a power-save mode to operating in a non-power save power mode; wherein the controller is further configured to perform a wake-up process at the wireless device to operate in the non-power save mode in response to receiving the wake-up packet and to exit the wake-up detection mode if the wake-up process is performed or the predetermined time period is exceeded.

183.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '748 patent.

Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

184.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

185.    Integral Wireless requests that the Court find in its favor and against Defendant, and

that the Court grant Integral Wireless the following relief:

a.  Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.  A permanent injunction enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '283 patent, the '424 patent, the '258 patent, the '654 patent, and the '714 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.  Judgment that Defendant account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringements be found willful as to the '283 patent, the '424 patent, the '258 patent, the '654 patent, and the '714 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>March 12, 2026</u>                    Respectfully submitted,

By: */s/ James F. McDonough, III*

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 32832
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1001 Bannock Street
Suite 241
Denver, CO  80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff* **INTEGRAL WIRELESS TECHNOLOGIES** *LLC*

* Admitted to the Eastern District of Texas

**List of Attachments**

- Civil Cover Sheet

- Proposed Summons

**List of Exhibits**

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,292,283

B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,586,424

C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,668,258

D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,822,141

E.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,031,654

F.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,976,714

G.  Evidence of Use Regarding Infringement of U.S. Patent No. 9,207,748 – Chart 1

H.  Evidence of Use Regarding Infringement of U.S. Patent No. 9,207,748 – Chart 2

## List of Supporting Links

1.  U.S. Patent No. 7,292,283, USPTO,
    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7292283.

2.  U.S. Patent No. 7,586,424, USPTO,
    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7586424.

3.  U.S. Patent No. 7,668,258, USPTO,
    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7668258.

4.  U.S. Patent No. 7,822,141, USPTO,
    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7822141.

5.  U.S. Patent No. 8,031,654, USPTO.gov,
    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8031654

6.  U.S. Patent No. 8,976,714, USPTO.gov,
    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8976714

7.  U.S. Patent No. 9,207,748, USPTO,
    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9207748.